UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| RICHARD VINCENT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:04-CV-340 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| UNUM PROVIDENT CORPORATION; ) | |
| PROVIDENT LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M**

Before the Court is Plaintiff Richard Vincent's ("Plaintiff") motion to remand (Court File No. 4). The Court has considered Plaintiff's motion and Defendants UnumProvident Corporation ("Defendant UnumProvident") and Provident Life and Accident Insurance Company's ("Defendant Provident") (collectively, "Defendants") response in opposition thereto and both parties' supporting briefs and documentation (Court File Nos. 5, 10, 11, 15, 22, and exhibits thereto). For the following reasons, the Court will **DENY** Plaintiff's motion to remand (Court File No. 4).

**I.    STANDARD OF REVIEW**

Generally, any civil action brought in state court over which the federal courts have original jurisdiction may be removed by a defendant to the federal district court for the district and division "embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking removal carries the burden of establishing the district court has original jurisdiction over the matter.

*Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Removal petitions are strictly construed, with all doubts resolved against removal. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

## II. RELEVANT FACTS

In December 1992, Plaintiff purchased a disability policy from Defendant Provident (Exh. A to Court File No. 1, Complaint, ¶¶ 8-10). At the time, Plaintiff was employed by E.M. Care of Alliance, Inc., as a physician (Exh. 1 to Court File No. 11, Declaration of Charles Mitchell ("Mitchell Decl. 1") ¶¶ 3-4). In November 2003, Plaintiff states he was diagnosed as suffering from uncontrolled hypertension, situational depression and generalized anxiety disorder, and was determined to be unable to perform the material and substantial duties of his regular occupation (Exh. A to Court File No. 1, Complaint, ¶ 11). During this same time period, Plaintiff filed a claim for disability benefits under the policy (*Id.* at ¶ 12). Defendants denied Plaintiff's claim, deciding he was not permanently disabled (*Id.* at ¶ 14).

On February 3, 2004, Plaintiff filed an eight-count complaint in the Circuit Court of Hamilton County, Tennessee, alleging, *inter alia*, Defendants engaged in fraud, misrepresentation, breach of contract, breach of duty of good faith, bad faith failure to investigate, fraudulent suppression, and violations of the Tennessee Consumer Protection Act, seeking compensatory and punitive damages (*Id.* ¶¶ 19-66). Defendants promptly removed the case to this Court claiming the policy at issue is an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), thus rendering Plaintiff's action a claim for benefits under an ERISA plan and invoking federal question jurisdiction under 28 U.S.C. § 1331. Defendants also alleged the

2

Court has diversity jurisdiction under 28 U.S.C. § 1332[1] (Court File No. 1 ¶¶ 8, 9). Plaintiff now challenges Defendants' assertions regarding the nature of his disability policy, and Defendants' assertion of diversity[2], through the present motion to remand.

**II.   DISCUSSION**

Defendants allege the policy at issue in this case is part of an employee welfare benefit plan governed by ERISA. If Defendants are correct, Plaintiff's state law claims relating to that policy are preempted and federal law applies to determine recovery. *See* 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57, 107 S. Ct. 1549, 1557-58, 95 L. Ed. 2d 39 (1987). An "employee welfare benefit plan" is defined by ERISA as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). The United States Court of Appeals for the Sixth Circuit has developed a three-step factual analysis for determining whether a benefit plan satisfies the statutory definition set out in § 1002(1). *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir.1996). *See also Agrawal v. Paul Revere Life Ins. Co.,* 205 F.3d 297, 299-300 (6th Cir.2000). First, a court must apply the Department of Labor "safe harbor" regulations to determine whether the program

---

[1] Plaintiff is a citizen of Ohio, and Defendants have their principal place of business in Tennessee (*see* Exh. A to Court File No.1, Complaint, ¶¶ 1, 2).

[2] Although Plaintiff asserts this Court does not have diversity jurisdiction over this case in his motion to remand (Court File No. 4), he did not brief this issue, and Defendants did not address it. Therefore, the Court's analysis will focus on federal question jurisdiction based on an ERISA plan.

3

is exempt from ERISA. *Thompson,* 95 F.3d at 434. Second, a court should determine whether there was a "plan" by considering whether, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for obtaining benefits. *Id.* at 435. Finally, a court should determine whether the employer "established or maintained" the plan with the intent of providing benefits to its employees. *Id.*

### A. Applicability of the "Safe Harbor" Provision

Regulations promulgated by the Department of Labor provide a "safe harbor" provision excluding an employee insurance policy from ERISA coverage if: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions, and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction. 29 C.F.R. § 2510.3-1(j). Plaintiff claims his disability policy is exempt from ERISA because, to the best of his knowledge, he, not his former employer, paid the premiums on the policy, and the policy itself does not indicate his employer set up an ERISA plan or that his employer has any relationship to the policy (*see* Court File No. 5).

Defendants dispute these assertions and argue this is an ERISA policy because E.M. Care of Alliance, Inc., paid all premiums and it was part of an employee welfare benefit plan (Court File No. 10, p. 2). Defendants have submitted an affidavit signed by one of Defendants' chief underwriters, Charles Mitchell, indicating E.M. Care of Alliance, Inc., remitted all policy premiums

4

due on Plaintiff's policy while Plaintiff was employed there (Mitchell Decl. 1 ¶ 8). Attached to that affidavit is Plaintiff's application for the policy at issue, which contains the following question, "Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income?," to which Plaintiff checked "Yes" (*Id*., Exh. 1). Also attached to that affidavit is an invoice from Family Business Planning Group, Inc., addressed to E.M. Care of Alliance, Inc., requesting payment for four life disability and disability buyout policies, including Plaintiff's name and policy numbers, and instructing the check to be made out to Defendant Provident (*Id*., Exh. 2 p. 1). Defendants additionally submitted a letter from Family Business Planning Group, Inc. remitting payment from E.M. Care of Alliance, Inc., to Defendant Provident for all four employees' policies, including Plaintiff's policy (*Id.*, Exh. 2 p. 2), and Defendant Provident's record of payment received for those policies from E.M. Care of Alliance, Inc., including Plaintiff's policy (*Id*., Exh. 2 p. 3).

> Plaintiff has submitted a sworn affidavit stating:
>
> Defendant UNUM has always referred to my policy as an 'Individual Policy'. . . To the best of my knowledge, my former company, E.M. Care of Alliance, Inc. never contributed any corporate funds to pay premiums on the aforementioned policy of insurance. All premiums paid for the life of the policy have come from my personal funds. Moreover, E.M. Care of Alliance, Inc. had no participation in the aforementioned policy in any administrative or fiduciary capacity, nor is E.M. Care of Alliance listed in any capacity on the policy.

(Court File No. 5, Exh. 1, Affidavit of Richard Vincent ("Vincent Aff."), p. 2). However, Plaintiff has not offered any evidence in support of this allegation, such as a pay stub showing the deduction for his premium payment, or a canceled check made out to Defendant Provident in the amount of the premium. Plaintiff's policy and letters from Defendant Provident, which Plaintiff did submit (Vincent Aff., Exh. A-C), contain no evidence he, not his employer, always paid the premiums

himself. Therefore, the Court finds Plaintiff has not rebutted Defendants' evidence E.M. Care of Alliance, Inc., paid all premiums on Plaintiff's policies while he was employed there, and the first criterion of the "safe harbor" provision is not satisfied. Because each of the criteria must be met in order for a policy to be exempted under the "safe harbor" provision, the Court need not consider whether Plaintiff's policy satisfied the second, third or fourth criteria. *See Thompson*, 95 F.3d at 435.

**B.     Existence of a "Plan"**

The Court must next determine whether a "plan" existed, that is whether "'from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.'" *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). Plaintiff does not make any arguments the benefits, beneficiaries, and procedures for receiving benefits were not readily discernible from the policy itself. Rather, Plaintiff contends there is no evidence from which the Court could infer the existence of a plan since "[a]ll premiums paid for the life of the policy have come from my personal funds" (Vincent Aff. at 2). As articulated *supra*, Defendants have provided evidence demonstrating E.M. Care of Alliance, Inc., did, in fact, pay the premiums during the time he was employed there.

In *International Resources*, the Court found the facts the company chose the plan, paid the premiums, and gave coverage to all its employees as an employee benefit persuasive enough to find an ERISA plan existed. *Int'l Resources*, 950 F.2d at 298. These same factors persuade this Court to hold an ERISA plan existed here. Defendants have shown E.M. Care of Alliance, Inc., chose and negotiated the benefits, paid all premiums for covered employees, and gave coverage to at least a

6

class of physician employees as an employee benefit[3] (Mitchell Decl. 1 ¶ 4). In addition, E.M. Care of Alliance, Inc., received a 15 percent discount for its policies because it agreed to remit the premiums for all policies under a "list billing" or "Risk Number,"[4] and received an additional "Large Case" discount of 10 percent "due to the number and amounts of premiums for physician-employee policies" (*Id*. ¶¶ 4-7). Thus, the price and terms of the policy obtained by Plaintiff do not appear to have been attainable other than by virtue of his employment at E.M. Care of Alliance, Inc., (*see also* Mitchell Decl. 2 ¶ 7).

The reasonable person test does not mean a specific employee has to know a plan is governed by ERISA; rather, it means if a reasonable person in possession of the facts would be able to discern that a plan existed, then that plan is possibly an ERISA plan. *Nicholas v. Standard Ins. Co.*, 2002 WL 31269690, *6 (6th Cir. Oct. 9, 2002). It appears from Plaintiff's exhibits the policy at issue was a fully funded individual plan, rather than part of a group plan (*see* Exh. A, B, C to Vincent Aff.). However, this fact does not affect the Court's analysis where it is clear is E.M. Care of Alliance, Inc., took steps to provide at least a class of its employees with fully funded disability

---

[3]While the Court will not hazard a guess at how many persons worked at E.M. Care of Alliance, Inc., to determine whether all employees received this benefit, the invoice Defendants included with Charles E. Mitchell's declaration shows four physician employees were included in E.M. Care of Alliance, Inc.'s, Risk (or billing) Number (*See* Exh. 2 to Mitchell Decl. 1).

[4]One issue in Plaintiff's prior motion to stay (Court File No. 15), which the Court denied (Court File No. 25), was the difference between the Risk Number assigned to Plaintiff's policies in the documents Defendants submitted with Charles E. Mitchell's affidavit, dated 1994, and the risk number assigned to his policy in documents he received from Defendant Provident in 2003. Defendants explained the reason for this difference is that Plaintiff began paying the premiums on the policy himself in 1998, when he no longer worked for E.M. Care of Alliance, Inc., and at that time he was assigned a risk number separate from that of E.M. Care of Alliance, Inc. (See Court File No. 22, Supplemental Declaration of Charles E. Mitchell ("Mitchell Decl. 2") ¶ 4-5). Plaintiff did not respond to this explanation or offer any proof negating it.

policies. *See B-T Dissolution, Inc. v. Provident Life and Acc. Ins. Co.*, 101 F. Supp. 2d 930, 940 n. 16 (S.D. Ohio 2000) (coverage through individual rather than group policies "does not detract from the potential existence of an ERISA plan"). Those steps were sufficient to create a "plan."

### C.     Established or Maintained

Finally, the Court concludes E.M. Care of Alliance, Inc., "established or maintained" the plan with the intent of providing benefits to its employees. E.M. Care of Alliance, Inc., established the plan by negotiating the benefit and establishing a "Risk Number" for group billing (Mitchell Decl. 1 ¶¶ 4-6). E.M. Care of Alliance, Inc., maintained the plan by paying the premiums each pay cycle (*Id.* ¶ 8). The clear intent of E.M. Care of Alliance, Inc., was to provide a benefit to at least a class of its physician employees.

The Court additionally notes the fact Plaintiff ultimately left his employment with E.M. Care of Alliance, Inc., and took over payment of the full amount of the premiums himself does not extinguish the applicability of ERISA. This not a situation involving an individual conversion policy, but rather a continuation of the identical coverage under identical terms as initially acquired by virtue of the previous employment relationship. *See Mass. Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997) (state law claims under continuation coverage preempted by ERISA) (*see also* Mitchell Decl. 2). Upon leaving E.M. Care of Alliance, Inc., Plaintiff elected to continue his disability policy, continued to receive the same discounted rate, and was assigned to a new risk number for policyholders who are billed directly (Mitchell Decl. 2 ¶¶ 4-6). Other than Plaintiff taking over payment of the premiums, his disability policy remained in force without change (*Id.*).

Because the Court has federal question jurisdiction based on claims under an ERISA policy, it need not address the issue of diversity jurisdiction, which was raised by Plaintiff but not briefed

by either party.

**IV.     CONCLUSION**

Because the disability insurance policy which forms the basis of Plaintiff's claims is an employee welfare benefit plan governed by ERISA, the Court finds it has federal question subject matter jurisdiction over the present action and the Court will **DENY** Plaintiff's motion to remand (Court File No. 4).

An Order shall enter.

                                                              **/s/**
                                    **CURTIS L. COLLIER**
                          **UNITED STATES DISTRICT JUDGE**